Carmelo J. CLAUDIO, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

Enrique Maymi, Defendant Below, Appellant,

v.

State of Delaware, Plaintiff Below, Appellee.

Nos. 213, 2008, 206, 2008.

Supreme Court of Delaware.

Submitted: Aug. 27, 2008.
Decided: Oct. 8, 2008.

---

James J. Haley, Jr., Ferrara, Haley & Collins, Wilmington, Delaware for defendant below appellant Carmelo J. Claudio.

Andrew W. Gosner and Tanisha L. Merced, Wilmington, Delaware for appellant Maymi.

Paul R. Wallace, Department of Justice, Wilmington, Delaware for appellee.

Before STEELE, Chief Justice, BERGER and JACOBS, Justices.

STEELE, Chief Justice.

Enrique Maymi and Carmelo J. Claudio appeal from the Superior Court's denial of their postconviction motions. On appeal, Maymi and Claudio argue that the trial judge improperly instructed the jury on Murder in the First Degree (Felony Murder) in light of our decision in *Williams v. State*[1] and that, therefore, the Superior Court erred by denying their postconviction motions. We conclude that, the jury instruction substantially complied with our holding in *Williams* and did not contain any of the troubling language based on *Chao v. State*[2] that prompted our decision in *Williams*. Therefore, the trial judge committed no legal error and did not abuse his discretion by denying the postconviction motions. Accordingly, we affirm the judgment of the Superior Court.

### FACT AND PROCEDURAL BACKGROUND

On April 1, 1987, Maymi and Claudio were indicted on charges of Murder in the First Degree, Attempted Murder in the First Degree, two counts of Conspiracy in the First Degree, two counts of Robbery in the First Degree, and four counts of Possession of a Deadly Weapon During the Commission of a Felony. Following a joint trial before a Superior Court jury, both defendants were found guilty of all charged offenses. Maymi and Claudio were each sentenced to serve a life term,

---

1. 818 A.2d 906 (Del.2002).

2. 931 A.2d 1000 (Del.2007).

without probation or parole, for their convictions of Murder in the First Degree. Each defendant received a second life sentence, albeit with the possibility of probation or parole, for their convictions of Attempted Murder in the First Degree. Each defendant was also sentenced to an additional 45 years of imprisonment for the remaining offenses.

On January 22, 1991, we affirmed the Superior Court's judgment of conviction.[3] The events underlying the conviction, as recited by our 1991 opinion, were as follows:

On Friday, February 13, 1987, the victims, Juan Soto ("Soto") and Rafael Lopez ("Lopez"), were paid by their employers. They decided to go to a bar to listen to Spanish music. An acquaintance drove them from Avondale, Pennsylvania to the Spinning Wheel Inn, a tavern near Kaolin, Pennsylvania. Soto and Lopez arrived at the Spinning Wheel at approximately 7:00 p.m. They remained at the tavern until shortly before closing at 1:30 a.m. on February 14. Since they did not have a ride home, they began to ask other patrons for transportation back to Avondale. Their initial efforts were unsuccessful. Soto and Lopez then walked outside the tavern where they saw two men, later identified as the defendants, Claudio and Maymi, sitting in a car. Lopez asked the defendants if they could give him and Soto a ride back to Avondale. The defendants agreed in return for ten dollars for gas. Lopez gave the defendants ten dollars, and accompanied by Soto, left the Spinning Wheel parking lot in the defendants' car. Maymi was driving. Claudio was beside him. Soto and Lopez were both on the back seat.

Upon leaving the Spinning Wheel parking lot, Maymi turned left onto Route 41 towards Delaware, instead of right towards Avondale as Lopez and Soto had requested. A short time later, the defendants' vehicle turned from Route 41 onto Centerville Road near Hockessin, Delaware. There Maymi stopped the car. Claudio demanded that Soto and Lopez hand over all of their money. Soto exited the car and attempted to flee. However, Claudio struck Soto in the face twice and then stabbed him in the chest. Soto fell to the ground and Claudio removed several hundred dollars from his pockets. While on the ground, Soto heard Lopez scuffling with both of the defendants. He then heard the car drive away.

Detective John Downs ("Downs") of the New Castle County Police arrived at the crime scene early on the morning of Saturday, February 14. Lopez's dead body was on the side of the road. There was also evidence that another injured person had left the crime scene. Soto was discovered later that afternoon a short distance from where the attack had occurred. He was taken to Christiana hospital. [ ... ][4]

As described above, Maymi and Claudio were convicted, among other things, of Murder in the First Degree pursuant to 11 *Del. C.* § 636(a)(2) (Felony Murder). At the time of their convictions, Section 636(a)(2) provided:

A person is guilty of murder in the first degree when ... [i]n the course of and in furtherance of the commission or attempted commission of a felony ..., the person recklessly causes the death of

**3.** *Claudio & Maymi v. State,* 585 A.2d 1278 (Del.1991).

**4.** *Id.* at 1279–80.

another person.[5]

The relevant instruction given by the trial judge to the jury stated:

Murder in the first degree is defined as follows. A person is guilty of murder in the first degree when in the course of, and in furtherance of the commission of a felony, he causes the death of another person.

In order to find the defendants guilty of murder in the first degree, as charged in Count three of the indictment, you must find the following four elements have been established beyond a reasonable doubt.

The first element: A defendant caused the death of Rafael Lopez. By this I mean, that a defendant, by his own voluntary act, must have brought about this death, which would not have happened but for such act. "Voluntary act" means a bodily movement performed consciously or habitually as a result of effort or determination.

The second element: A defendant acted intentionally. That is, it must have been the defendant's conscious object or purpose to cause death in this case.

Third element: The killing occurred during the commission of another felony. In this case, that felony would be robbery in the first degree. The fourth element: The killing was in furtherance of, or was intended to assist in the commission of the felony.

On July 12, 2007, Maymi and Claudio filed separate motions for postconviction relief in the Superior Court, challenging the sufficiency of the instruction regarding the "in furtherance of" element of Section 636(a)(2). In light of our decision in *Williams,* both defendants argued that their convictions should be overturned. In *Williams,* we clarified the meaning of the phrase "in furtherance of":

In our view, the statutory language of the Delaware felony murder statute not only requires that the murder occur during the course of the felony but also that *the murder occur to facilitate commission of the felony.* To the extent that the *Chao* opinion states that the "in furtherance of" language of the statute addresses solely the identity of the person who is committing the actual killing, it is overruled. Accordingly, we adhere to the holding of *Weick[ v. State,* 420 A.2d 159 (Del.1980) ] and hold that the felony murder language requires not only that the defendant, or his accomplices, if any, commit the killing but also that *the murder helps to move the felony forward.*[6]

On April 1, 2008, the Superior Court denied Maymi and Claudio's motions for postconviction relief, holding that the jury instruction on Felony Murder was sufficient and that the murder of Lopez was committed "in furtherance of" robbery.[7] Both defendants separately appealed from the Superior Court's decision. Because the claims presented by Maymi and Claudio on appeal are identical, the two cases have been consolidated.

### DISCUSSION

■ Maymi and Claudio's sole contention is that the trial judge's instruction on

---

**5.** 11 *Del. C.* § 636(a)(2) (1987). Section 636(a)(2) was subsequently amended, effective May 19, 2004, and it currently provides: "A person is guilty of murder in the first degree when ... [w]hile engaged in the commission of, or attempt to commit, or flight after committing or attempting to commit any felony, the person recklessly causes the death

of another person." 74 *Del. Laws* 2004, ch. 246, § 2.

**6.** 818 A.2d at 913 (emphasis added).

**7.** *State v. Claudio & Maymi,* 2008 WL 853799 (Del.Super.).

Murder in the First Degree (Felony Murder) failed to comply with this Court's decision in *Williams v. State* and that, therefore, the Superior Court erred in denying their postconviction motions. The Superior Court's denial of a motion for postconviction relief is reviewed on appeal for abuse of discretion; questions of law, however, are reviewed *de novo*.[8]

The State preliminarily argues that Maymi and Claudio's claims are barred under Superior Court Criminal Rule 61. The Superior Court addressed the substance of Maymi and Claudio's claims, thereby implicitly ruling that the claims were not barred under Rule 61(i). Arguing that the Superior Court should not have addressed the merits of the claims, the State relies on Rule 61(i)(1), with respect to both defendants, and Rule 61(i)(2), only with respect to Claudio's motion.[9] Those provisions, as applicable to Maymi and Claudio, state:

> (1) Time limitation. A motion for postconviction relief may not be filed more than [three years] after the judgment of conviction is final or, if it asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final, more than [three years] after the right is first recognized by the Supreme Court of Delaware or by the United States Supreme Court.

> (2) Repetitive Motion. Any ground for relief that was not asserted in a prior postconviction proceeding, as required by subdivision (b)(2) of this rule, is thereafter barred, unless consideration of the claim is warranted in the interest of justice.[10]

Maymi and Claudio's judgments of conviction became final on February 14, 1994, when we issued our mandate on direct appeal. The defendants' motions for postconviction relief were filed more than 13 years later, on July 12, 2007. *Williams,* which "newly recognized" the right on which Maymi and Claudio rely, was decided on December 13, 2002.[11] In *Chao v. State,* decided on June 20, 2007, we held that *Williams* applies retroactively.[12] The State argues that the three-year limitations period contained in Rule 61(i)(1) should be applied as of December 13, 2002 *i.e.,* when this Court first recognized the right asserted, and not from June 20, 2007 *i.e.,* when we held that the newly recognized right was applicable retroactively. We need not decide that issue because Rule 61(i)(5) contains an exception from both procedural bars on which the State relies. Rule 61(i)(5), referred to as the "fundamental fairness" exception, provides:

> (5) Bars Inapplicable. The bars to relief in paragraphs (1), (2), and (3) of this subdivision shall not apply to a claim

8. *Outten v. State,* 720 A.2d 547, 551 (Del. 1998) (citing *Dawson v. State,* 673 A.2d 1186, 1190 (Del.1996), *cert. denied,* 519 U.S. 844, 117 S.Ct. 127, 136 L.Ed.2d 76 (1996)).

9. The State also cites Rule 61(i)(4), which provides: "Any ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, is thereafter barred, unless reconsideration of the claim is warranted in the interest of justice." The State recognizes, however, that

"the felony murder ground arguably may not have been previously adjudicated," thus making the procedural bar of Rule 61(i)(4) inapplicable.

10. Super. Ct.Crim. R. 61. Because Maymi and Claudio's convictions became final before July 1, 2005, the current limitations period (reduced from three years to one year) is not applicable.

11. *See generally Williams,* 818 A.2d 906.

12. 931 A.2d at 1000.

that the court lacked jurisdiction or to a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction.

Because Maymi and Claudio state a "colorable claim that there was a miscarriage of justice," it is appropriate that we reach the merits of the defendants' claim.[13] We conclude, however, that there was no miscarriage of justice because the trial judge's instruction on the "in furtherance of the commission ... of a felony" element of Felony Murder was legally sufficient.

■ The relevant jury instruction defined that element to require a jury finding that "the killing was ... intended to assist in the commission of the felony." As we explained in *Williams*, "in furtherance of" requires that "the murder occur to facilitate commission of the felony [*i.e.,*] the murder helps to move the felony forward."[14] The *Williams* opinion did not, however, suggest specific language that needed to be used in a jury instruction, nor did it hold that the statutory language alone is insufficient.

■ "A defendant has no right to have the jury instructed in a particular form. However, a defendant is entitled to have the jury instructed with a correct statement of the substantive law."[15] Maymi and Claudio do not, nor could they, argue that the given instruction contained an incorrect statement of the law. Rather, they claim that, although the language used in the instruction appears familiar to that used in *Williams*, a reasonable possibility exists that the jury was confused about the meaning of the "in furtherance of" element. We conclude that no such possibility existed, "judged by common practices and standards of verbal communication."[16] The jury instruction at issue here included the then-extant statutory language (the "in furtherance of" requirement), but then added an explanation that substantially complies with the interpretation given in *Williams*.[17]

Finally, the instruction did not include any of the troubling language, based on *Chao*, that prompted our decision in *Williams*. In *Williams*, we overruled *Chao* to the extent it held that the "in furtherance of" element requires only that the defendant or his accomplices commit the murder during the course of the felony.[18] Similar concerns are not implicated here because there is sufficient evidence not only that the defendants committed the murder during the course of the un-

13. *State v. Hill*, 2008 WL 361227, at *1 (Del.Super.), *aff'd*, *Hill v. State*, 2008 WL 4151828 (Del.).

14. *Williams*, 818 A.2d at 913.

15. *Guy v. State*, 913 A.2d 558, 563 (Del.2006) (citing *Claudio v. State*, 585 A.2d 1278, 1282 (Del.1991)).

16. *Chance v. State*, 685 A.2d 351, 354 (Del. 1996); *Probst v. State*, 547 A.2d 114, 119 (Del.1988); *Baker v. Reid*, 57 A.2d 103, 109 (Del.1947).

17. We recently approved a jury instruction almost identical to the one given here. *See Burrell v. State*, 953 A.2d 957, 961–63 (Del.

2008). Burrell's jury was instructed that the fourth element of the felony murder charge was that "the killing was in furtherance of or was intended to assist in the commission of the felony of robbery in the first degree." *Id.* at 962. We held that the instruction was appropriate because "any semantic distinction between the word 'assists' and the term 'in furtherance of' is not of such a magnitude that the jury was either misled as to its function or unable properly to apply the law to the facts of Burrell's case." *Id.* at 963.

18. *See* 818 A.2d at 913.

derlying felony (the robbery) but also that the murder facilitated the commission of the robbery.[19]

## CONCLUSION

For the foregoing reasons, the judgment of the Superior Court is affirmed.

19. As noted by the Superior Court in its decision denying Maymi and Claudio's motions for postconviction relief:

The fact that Soto exited the car and attempted to flee is a significant fact in this case because it shows that the victims were not going to cooperate with the Defendants. In order to overcome Soto's resistance, Claudio hit Soto in the face and stabbed him in the chest. Soto fell to the ground injured and was unable to prevent Claudio from removing the money from his pockets. Claudio and Maymi then turned their attack on Lopez. Lopez was stabbed multiple times in the chest, arms and back. Before heading to the bar, Lopez cashed his paycheck. He carried almost $200 in cash. When the police recovered his body, however, Lopez had no money in his pockets.

Claudio and Maymi clearly used force in order to incapacitate their victims, making it easier for them to execute the robbery. Without the use of such force, Soto and Lopez would have fled leaving Defendants unable to perpetuate the robbery. Based on these facts, the Court finds that the murder of Lopez, and the attempted murder of Soto, was meant to help Claudio and Maymi proceed with the robbery. Because Lopez's murder was committed "in furtherance of" robbery, this claim has no[ ] merit. *State v. Claudio*, 2008 WL 853799, at *3 (Del.Super.) (internal citations omitted). Neither defendant appeals from that ruling of the Superior Court. The only issue that was presented for our review on appeal is whether the jury instruction was legally sufficient.