IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| NIGEL CAMPBELL, | § | |
| | § | |
| Defendant Below, | § | No. 553, 2019 |
| Appellant, | § | |
| | § | Court Below: Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. 1606016610A&B (N) |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: May 22, 2020
Decided: July 1, 2020

Before **VALIHURA**, **VAUGHN**, and **TRAYNOR**, Justices.

## **ORDER**

Upon consideration of the briefs of the parties and the record in this case, it appears to the Court that:

(1)    The defendant below-appellant, Nigel Campbell, has appealed the Superior Court's denial of his first motion for postconviction relief under Superior Court Criminal Rule 61.[1]  For the reasons set forth below, we affirm the Superior Court's judgment.

(2)    In the first phase of a bifurcated trial in March 2017, a Superior Court jury found Campbell guilty of possession of a firearm during the commission of a

---

[1] *State v. Campbell*, 2019 WL 6173553 (Del. Super. Ct. Nov. 19, 2019).

felony, aggravated possession of cocaine, possession of heroin, and an act of intimidation. The jury found Campbell not guilty of two counts of drug dealing and possession of drug paraphernalia. In the second phase of the trial, the jury found Campbell guilty of possession of a firearm by a person prohibited and possession of ammunition by a person prohibited. The Superior Court sentenced Campbell to thirty-two years of Level V incarceration, suspended after seventeen years for decreasing levels of supervision.

(3) This Court affirmed Campbell's convictions on direct appeal, concluding that the Superior Court had not erred in denying his motion to suppress evidence.[2] The Court described the events leading to Campbell's arrest and convictions as follows:

> On June 21, 2016, a confidential informant warned Detective Jubb, a Delaware State Police ("DSP") officer assigned to a Governor's Task Force ("GTF") team, that Campbell was selling heroin and crack cocaine from an apartment in the Kimberton Apartment complex on West 29th Street in Wilmington. Because Campbell was a probationer, the DSP advised probation officer Brian Vettori, who was also a member of the GTF team, of Campbell's alleged dealings and their plan to conduct a controlled purchase of narcotics from him. Consequently, Vettori reviewed Campbell's casefile and, when he did, learned that Campbell had tested positive for marijuana earlier that month. Vettori then conducted a DELJIS search and discovered that Campbell had recently told police in an unrelated matter that he resided in the

---

[2] *Campbell v. State*, 2018 WL 1709669 (Del. Apr. 6, 2018).

Kimberton Apartment complex, which was not his residence of record with Probation and Parole.

As part of the probation-search protocol, Vettori contacted his supervisor, Robert Willoughby, and advised him of the informant's allegations, the police's planned purchase of narcotics, that Campbell recently tested positive for marijuana, and that a recent police report partially corroborated the informant's allegations in that Campbell told police that he lived in the Kimberton Apartments. Willoughby approved the search.

The same day, DSP followed through with a controlled narcotics purchase. The informant contacted Campbell, who in turn told the informant to drive to the Kimberton Apartment complex. As Campbell exited the apartment, he was arrested. A search incident to that arrest uncovered thirteen bags of heroin weighing approximately 0.2 grams, and 7.4 grams of crack cocaine in Campbell's pocket. Campbell's other pocket contained a set of keys to an apartment in the complex.

After the arrest, Officer Vettori searched Campbell's apartment, where he discovered small plastic bags containing a white, chunky substance weighing approximately fifty grams in a bedroom shared by Campbell and his girlfriend. Vettori also located thirty bags of heroin inside a clear, knotted sandwich bag on top of a nightstand in the bedroom. Campbell's wallet with his license was on the nightstand, along with a scale, a prescription bottle containing marijuana, and a cigarette packet holding Oxycodone pills. Vettori found a loaded handgun with a laser sight under the nightstand. He also discovered $1,400 in cash in a Tupperware-style dresser and some additional cash bundled on the bed. Campbell's mail and clothing were also in the bedroom.[3]

---

[3] *Id.* (citation omitted).

(4)     In September 2018, Campbell filed a timely motion for postconviction relief and a motion for appointment of counsel. The Superior Court granted Campbell's motion for appointment of postconviction counsel. Postconviction counsel subsequently filed a motion to withdraw on the basis that there were no claims he could ethically advance. After Campbell's trial counsel submitted an affidavit responding to Campell's claims, Campbell submitted additional arguments, and the State responded to Campbell's motion, the Superior Court denied Campbell's postconviction motion and granted postconviction counsel's motion to withdraw. This appeal followed.

(5)     We review the Superior Court's denial of postconviction relief for abuse of discretion, although we review questions of law *de novo*.[4] Both the Superior Court and this Court on appeal first must consider the procedural requirements of Rule 61 before considering the merits of any underlying postconviction claims.[5] The procedural bars of Rule 61 do not bar a timely claim of ineffective assistance of counsel.[6] Campbell argues, as he did below, that his trial counsel ineffectively litigated the motion to suppress. Campbell has waived appellate review of the other claims that he raised below, but did not argue in his

---

[4] *Claudio v. State*, 958 A.2d 846, 850 (Del. 2008).
[5] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[6] *Bradley v. State*, 135 A.3d 748, 759 (Del. 2016).

opening brief.[7]

(6) To prevail on his ineffective assistance of counsel claim, Campbell must establish that: (i) his counsel's representation fell below an objective standard of reasonableness; and (ii) but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceedings would have been different.[8] Although not insurmountable, the *Strickland* standard is highly demanding and subject to a "strong presumption that the representation was professionally reasonable."[9] The defendant must also set forth and substantiate concrete allegations of actual prejudice.[10]

(7) After reviewing the transcript of the motion to suppress hearing, the parties' post-hearing submissions, and Campbell's postconviction submissions, the Superior Court found that trial counsel's performance as to the motion to suppress was not deficient, but "[i]n fact…met or exceeded the relevant objective standard of reasonableness."[11] The Superior Court also found that Campbell had failed to show prejudice. Campbell contends that the Superior Court erred because his trial counsel

---

[7] *Somerville v. State*, 703 A.2d 629, 631 (Del. 1997); *Murphy v. State*, 632 A.2d 1150, 1152 (Del. 1993). Those claims were that his trial counsel was ineffective for failing to: (i) object to the prosecutor's statement regarding the elements of constructive possession; (ii) file a motion for acquittal in the second trial; and (iii) provide him with a copy of the preliminary hearing transcript.

[8] *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

[9] *Flamer v. State*, 585 A.2d 736, 753 (Del. 1990).

[10] *Younger*, 580 A.2d at 555.

[11] *Campbell*, 2019 WL 6173553, at *3.

unreasonably argued that Probation and Parole had failed to comply with 11 *Del. C.* § 4321(d)[12] and its own procedures. According to Campbell, his trial counsel should have investigated where Campbell resided and argued that Campbell was only an overnight guest at Kimberton Apartments so a search of the apartment could not be conducted without a nighttime search warrant, the apartment tenant's consent, or probable cause. Campbell's arguments are without merit.

(8)   As stated in this Court's decision on Campbell's direct appeal, "warrantless administrative searches of probationers need not be supported by probable cause; reasonable suspicion is adequate."[13]  We further held that the probation officer had reasonable suspicion to search the Kimberton apartment because "Campbell was found with bags of heroin and crack cocaine outside of the Kimberton apartments, carrying keys to a Kimberton apartment in the very apartment complex where a confidential informant claimed that Campbell was selling heroin and crack cocaine."[14]  The probation officer testified at the motion to suppress hearing that he obtained supervisory approval for the administrative search based on the confidential informant's tip that Campbell was selling drugs from

---

[12] This section provides that probation and parole officers may "may conduct searches of individuals under probation and parole supervision in accordance with Department procedures while in the performance of the lawful duties of their employment." 11 *Del. C.* § 4321(d).

[13] *Campbell*, 2018 WL 1709669, at *2 (citing *Pendleton v. State*, 990 A.2d 417, 419 (Del. 2010) and *United States v. Knights*, 534 U.S. 112, 121 (2001)).

[14] *Id.*

Kimberton Apartments and his confirmation that Campbell had recently provided the Kimberton Apartments address as where he lived to the police in an unrelated matter.

(9) In arguing that his trial counsel should have conducted an investigation to determine where he was living at the time of his arrest, Campbell ignores that he was found with keys to the Kimberton Apartment complex and apartment in his pocket, he provided the Kimberton Apartment address to the police three times in May 2016, and the Kimberton apartment tenant's testimony that Campbell resided there with her and their child at the time of his arrest. Under these circumstances and given Campbell's status as a probationer, trial counsel's decision to base the motion to suppress on omissions and errors in Probation and Parole's approval of the administrative search rather than a lack of search warrant, tenant consent, or probable cause is not professionally unreasonable. Nor has Campbell shown a reasonable likelihood that the outcome of the motion to suppress would have been different if his trial counsel had made the arguments that Campbell now raises.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ James T. Vaughn, Jr.
Justice

7